DUGAN, J.
*188 ¶ 1 This case involves issues of insurance coverage and the duty to defend involving Milwaukee Metropolitan Sewerage District (MMSD) and insurance companies, Greenwich Insurance Company and Steadfast Insurance Company, relating to the defense of lawsuits against MMSD in the wake of a June 7 and 8, 2008 rain event (the "rain event lawsuits").[1] After the rain event lawsuits were filed, MMSD tendered its defense to Steadfast and Greenwich.
*189 Steadfast accepted the tender and defended MMSD. Greenwich declined the tender and did not defend MMSD. Eventually, the rain event lawsuits settled and, as a part of the settlement, Steadfast reimbursed MMSD $1.55 million for MMSD's defense costs. Steadfast then brought the lawsuit (the "insurance lawsuit") that is the subject of this appeal against Greenwich.[2]
¶ 2 Ultimately, the trial court determined that Greenwich breached its duty to defend and, therefore, had waived its rights to raise coverage defenses, and was responsible for paying the $1.55 million for MMSD's defense and Steadfast's $325,500 attorney fees incurred in bringing the insurance lawsuit.
¶ 3 On appeal, Greenwich argues that it did not breach its duty to defend the rain event lawsuits and did not waive its right to litigate the coverage issues. Greenwich further argues that it was entitled to summary judgment for the following reasons: (1) its policy with MMSD was excess coverage, *505 with Steadfast's coverage being primary; (2) its policy with MMSD had a $250,000 self-insured risk retention amount and MMSD did not establish that it had expended that amount in defending the rain event lawsuits; and (3) Steadfast's claim is barred by the one-year statute of limitations in WIS. STAT. § 893.92 (2015-16),[3] applicable to actions for contribution. Alternatively, *190 Greenwich argues that it was entitled to an allocation of the costs as between Steadfast, Travelers and itself. In addition, Greenwich argues that Steadfast is not entitled to recover attorney fees in connection with the insurance lawsuit.
¶ 4 We conclude as follows: (1) Greenwich's policy provided primary, not excess, coverage for claims against MMSD; (2) MMSD has established that it met the $250,000 risk retention amount by incurring $594,302.23 in defense costs; (3) Steadfast's equitable subrogation claim is timely because the six-year statute of limitations in WIS. STAT. § 893.43 applicable to contract claims applies to Steadfast's claim, which is premised on Greenwich's breach of the duty to defend MMSD; (4) under the facts of this case, because Greenwich breached its duty to defend MMSD, Greenwich is not equitably entitled to an allocation of MMSD's defense costs; and (5) under the facts of this case, Steadfast is equitably entitled to recover attorney fees in this lawsuit. Based on our conclusions, we affirm the trial court's orders and judgments.
BACKGROUND
¶ 5 MMSD is a regional government agency that provides water reclamation and flood management services to the Greater Milwaukee area. Since 1998, MMSD has contracted with private parties to operate and maintain its sewerage system. From March 1, 1998, through February 29, 2008, MMSD contracted with United Water Services Milwaukee LLC to operate the system. From March 1, 2008, through all times relevant to this action, MMSD contracted with Veolia Water North America-Central, LLC to operate the system.
¶ 6 MMSD's agreements with United Water and Veolia, respectively, obligated each company to fully *191 indemnify MMSD for claims arising out of the operation and maintenance of the system and to obtain insurance to cover its indemnity obligations. The agreements required that the insurance policies obtained by each company list MMSD as an additional insured. Both companies complied with those requirements.
¶ 7 The June 2008 rain event overwhelmed MMSD's sewer system and more than 8,000 homeowners reported basement sewage backups. Between February 2009 and May 2009, four rain event lawsuits were filed against MMSD. The rain event lawsuits included allegations that MMSD and Veolia were negligent in the inspection, maintenance, repair, and operation of the sewer system and diversion gates prior to and during the rain event.
¶ 8 Subsequently, the rain event lawsuits were consolidated into two separate actions. Later, United Water was named as a defendant in one of the rain event lawsuits and negligence claims, like those against MMSD and Veolia, were alleged against it.
¶ 9 On June 9, 2009, after MMSD had been sued in the rain event lawsuits, it sent a letter to both Steadfast and Greenwich tendering the defense. As noted, Steadfast, the insurer for Veolia, which *506 had named MMSD as an additional insured, accepted the tender and defended MMSD.
¶ 10 As will be further detailed below, Greenwich, United Water's insurer, did not accept the tender, did not defend MMSD, and did not pay any amounts for defense costs, despite the fact that MMSD was named as an additional insured on the policy. In a September 23, 2009 letter, Greenwich denied coverage, stating in part, as follows:
Initially, we fail to see how [United Water] could be liable for causing a sewage backup in June 2008 when its services for MMSD terminated in February 2008.
*192 From a professional and contracting services standpoint, there is ample evidence that when [United Water] turned over operational responsibilities to Veolia and MMSD in February 2008, all systems, equipment, and machinery at the subject sewage overflow diversion chamber were functioning according to operational protocols. Thus, we can only conclude that [United Water]'s work met all professional and contracting standards of care.
The letter also raises MMSD's satisfaction of the risk retention amounts and "other insurance" provisions as reasons for denying coverage.
¶ 11 On October 14, 2010, MMSD renewed its tender of defense. In its letter to Greenwich, MMSD noted as a basis for coverage that the plaintiffs in the rain event lawsuits had made specific allegations concerning United Water's negligence. On March 9, 2011, Greenwich responded to MMSD's renewed tender of defense, stating that there was a potential for coverage, but it reserved its rights, noting that under its "other insurance" clause, Greenwich was excess to the $250,000 risk retention amount and any other valid insurance available to MMSD, including that through Veolia's policy.
¶ 12 On May 31, 2011, Greenwich's attorney sent another letter, acknowledging that there might be potential coverage and asking for information to determine if MMSD had satisfied the $250,000 risk retention amount. On June 16, 2011, MMSD's attorney responded, stating that MMSD had paid its legal counsel a total of $823,602.75 and that, clearly, MMSD had "surpassed the risk retention amount and [was] well into the liability portion of the policy." Greenwich then responded stating, "the coverage potentially provided to MMSD under the Greenwich Policy is excess of the *193 $250,000 deductible and the $30,000,000 limits provided under the Steadfast Pollution Policy." Greenwich did not provide MMSD with any defense during the rain event lawsuits.
¶ 13 The rain event lawsuits settled without MMSD or Steadfast making any payments towards the parties' claimed damages. However, Steadfast reimbursed MMSD $1.55 million towards the defense costs that MMSD paid for those lawsuits. After the rain event lawsuits settled, Steadfast filed this action against Greenwich and Travelers, seeking to recoup the monies that it had paid to MMSD for the defense costs. MMSD intervened to recoup unpaid defense costs from all the other parties.
¶ 14 As this action proceeded, the parties filed and briefed motions and cross-motions for summary judgment. Before the trial court issued any decision on those motions, Steadfast and all parties, except Greenwich, settled the case. Thus, as mentioned, the sole remaining parties to this action are Steadfast and Greenwich.
¶ 15 On May 15, 2015, the trial court issued a written decision denying Greenwich's summary judgment motion based on its determination that Greenwich had *507 breached its duty to defend MMSD and, thereby, waived its rights to raise any coverage defense.
¶ 16 On November 13, 2015, Steadfast and Greenwich filed a stipulation stating that Steadfast had reasonably and necessarily incurred $1.55 million for MMSD's defense in the rain event lawsuits. However, they reserved their respective rights to argue what portion of the $1.55 million, if any, Steadfast should recover from Greenwich. The trial court entered an order approving the stipulation.
*194 ¶ 17 Thereafter, the parties filed additional summary judgment motions. On June 29, 2016, the trial court granted Steadfast's summary judgment motion, awarding judgment against Greenwich in the amounts of $1.55 million dollars as damages, and $325,500 as attorney fees for the insurance lawsuit. This appeal followed.
STANDARD OF REVIEW
¶ 18 We review a grant of summary judgment using the same standards the trial court applied in making its determination, and "accordingly, we benefit from, but need not give deference to, the analys[is] of the [trial] court[ ]." See State Farm Mut. Auto. Ins. Co. v. Langridge , 2004 WI 113, ¶ 12, 275 Wis. 2d 35, 683 N.W.2d 75. When we review a grant of summary judgment, our review is de novo . See id.
¶ 19 The issues presented involve multiple questions of law, which are subject to de novo review. The interpretation of an insurance policy and the existence of coverage under the policy are questions of law that are decided de novo . See id. , ¶ 13. The interpretation of an insurance policy to determine the scope of an insurer's duty to defend also involves a question of law that is subject to our de novo review. See Estate of Sustache v. American Family Mut. Ins. Co. , 2008 WI 87, ¶ 18, 311 Wis. 2d 548, 751 N.W.2d 845. An insurer's duty to defend its insured "is triggered by the allegations contained within the four corners of the complaint" against the insured." See Marks v. Houston Cas. Co. , 2016 WI 53, ¶¶ 37, 39, 369 Wis. 2d 547, 881 N.W.2d 309 (citation omitted). In *195 analyzing whether an insurer has a duty to defend (1) "allegations in the complaint are construed liberally and all reasonable inferences are assumed," (2) "ambiguity in the insurance policy is construed against the insurer," and (3) "when an insurance policy provides coverage for even one claim made in a lawsuit, the insurer is obligated to defend the entire suit." Id. , ¶ 42 (citations omitted).
¶ 20 Furthermore, "[t]he question of which statute of limitations governs a particular claim is one of law which we decide de novo ." Hicks v. Nunnery , 2002 WI App. 87, ¶ 17, 253 Wis. 2d 721, 643 N.W.2d 809 (italics added). In addition, the proper measure of damages for an insurer's breach of its duty to defend "is a question of law which this court decides independently and without deference to the lower courts." See Newhouse v. Citizens Sec. Mut. Ins. , 176 Wis. 2d 824, 837, 501 N.W.2d 1 (1993).
DISCUSSION
¶ 21 We address the multiple issues presented in sequence and begin by addressing whether Greenwich waived its right to litigate coverage by asserting that it did not have a duty to defend because there was no coverage under its policy with United Water. As a preliminary matter, Greenwich argues that the trial court erred in holding that, because Greenwich breached its duty to defend, Greenwich forfeited its right to litigate coverage with respect to its duty to defend.
*508 ¶ 22 Steadfast argued, and the trial court agreed, that Greenwich waived its right to litigate coverage because Greenwich had breached its duty to defend MMSD. However, on appeal, Steadfast does not make that argument. Rather, Steadfast notes that the trial *196 court's decision was issued prior to the Wisconsin Supreme Court's issuance of Marks , 369 Wis. 2d 547, 881 N.W.2d 309.[4] Thus, Steadfast implicitly concedes that, given the Marks holding, Greenwich did not waive its right to contest coverage in this case with respect to the duty to defend and the trial court's ruling to the contrary is erroneous.[5] Therefore, we address whether Greenwich's coverage defenses apply such that Greenwich had no duty to defend MMSD in the rain event lawsuits.
Greenwich's Policy did not Provide Excess Coverage over the Coverage Provided by Steadfast's Policy Because under the Facts of this Case neither the Greenwich nor the Steadfast "Other Insurance" Provisions were Triggered
¶ 23 Greenwich argues that it did not breach its duty to defend MMSD in the rain event lawsuits *197 because its coverage was excess over the Steadfast policy coverage. Greenwich analyzes the "other insurance" language in its policy and Steadfast's policy and concludes that the Steadfast policy provides primary coverage while the Greenwich policy provides excess coverage. Greenwich asserts that under Wisconsin law, " 'other insurance' provisions are applied as written, and given full effect, in situations involving concurrent coverage ." (Emphasis added.)
¶ 24 By contrast, Steadfast argues that we need to determine whether any "other insurance" provision is triggered by the facts in this case before we examine the language in the policies regarding "other insurance." We agree.
¶ 25 "Other insurance" provisions are triggered when (1) two or more insurance policies, (2) insure the same risk and the same interest, (3) for the benefit of the same person or entity, and (4) during the same time period. Plastics Eng'g Co. v. Liberty Mut. Ins. Co. , 2009 WI 13, ¶¶ 48-49, 315 Wis. 2d 556, 759 N.W.2d 613. Further, the provisions do not apply to successive insurance policies. See id.
¶ 26 In Plastics , the Wisconsin Supreme Court held that " '[o]ther insurance' refers only to two or more policies insuring the same risk, and the same interest, for the benefit of the same person, during the same period." See id. (citation and one set of quotation marks). Plastics further explains that, "[t]he purpose of an 'other insurance' clause is to define which coverage is primary and which coverage is excess between policies.... 'Other insurance' clauses govern the relationship between insurers, and they do not affect the right of the insured to recover under each *509 concurrent policy." Id. (citations and one set of quotation marks omitted). *198 Moreover, it states that " '[w]henever there are two policies that apply to the same insured at the same time, the issue of which policy must pay first-or which is primary and which is excess-is dealt with by other insurance clauses.' " Id. (citation omitted). Additionally, "[t]he accepted meaning of 'other insurance' provisions does not include application to successive insurance policies ." Id. (emphasis added).
¶ 27 In Plastics , the court concluded that the requisite conditions, before an "other insurance" provision would apply, were not satisfied. It stated that "[t]he issue is not which of two or more policies pays first because the Liberty Mutual policies are not concurrent policies between competing insurers that apply to the same time period." Id. , ¶ 49.
¶ 28 The Plastics holding controls in this case. First, the policies do not insure the same party. Greenwich's policy insured United Water with respect to United Water's conduct in operating and maintaining MMSD's system. It did not insure against any conduct by Veolia in operating the system. Likewise, Steadfast's policy insured Veolia with respect to Veolia's conduct in operating and maintaining MMSD system. It did not insure against any conduct by United Water in operating the system. Additionally, the policies do not provide coverage for the same time period. Greenwich provided coverage for United Water's operation and maintenance of MMSD's system from March 1, 1998, until February 29, 2008. As of March 1, 2008, Veolia took over the operation and management of the system. The policies are successive, not concurrent. They do not cover the same time period.
¶ 29 By contrast, Greenwich argues that the "other insurance" provisions were triggered in this *199 case, citing Schoenecker v. Haines , 88 Wis. 2d 665, 674, 277 N.W.2d 782 (1979), and Oelhafen v. Tower Insurance Co. , 171 Wis. 2d 532, 536-37, 492 N.W.2d 321 (Ct. App. 1992). We do not find Greenwich's argument persuasive. In Schoenecker , the court expressly stated that "[b]ecause both policies provided concurrent coverage absent contract provisions relating to 'other insurance,' it is necessary to analyze the 'other insurance' provision of each policy." Id ., 88 Wis. 2d at 669, 277 N.W.2d 782. However, unlike Schoenecker , this action involves successive coverage, not concurrent coverage.
¶ 30 Oelhafen involved review of the trial court's apportionment of four insurers' respective obligations to pay portions of a personal injury action settlement in excess $900,000 against the insured boat owners and operators. Id. , 171 Wis. 2d at 534-35, 492 N.W.2d 321. On appeal, the four insurers challenged the trial court's apportionment of the insurers' liability for the settlement, which had directed each of the three primary insurers to pay the policy limit and the fourth insurer, the issuer of "a true umbrella policy," to pay "only any excess liability not paid by the other insurers." Id. at 535-36, 492 N.W.2d 321. We noted that all four policies had an "other insurance" provision and the parties had agreed that the provisions applied, but they were repugnant to each other. See id. at 536, 492 N.W.2d 321. Thus, we held that under Wisconsin law, none of the "other insurance" provisions would be enforced. See id. Moreover, Oelhafen does not address when an "other insurance" provision is triggered. See id. The action also involved concurrent, not successive, coverage among the insurance policies. See id. at 535, 492 N.W.2d 321. Again, this action involves successive policies, not concurrent policies.
¶ 31 In its initial brief, Greenwich also relies upon Riccobono v. Seven Star, Inc. , *510 as supporting its argument. See id. , 2000 WI App 74, ¶ 13, 234 Wis. 2d 374, 610 N.W.2d 501. In Riccobono , this court held that *200 both insurance policies covered the same parties for the same risks stating as follows: "[c]onsequently, we agree with the trial court that both insurance policies provide coverage for the same parties and the same risk, and an interpretation of the 'other insurance' clauses found in the policies was necessary to resolve the dispute." Id. , ¶ 10. Rather than supporting Greenwich's argument, Riccobono supports Steadfast's argument that an "other insurance" provision only applies when both policies provide coverage for the same parties and the same risk . See id. , ¶ 13.
¶ 32 Interestingly, Greenwich's reply brief also relies upon Riccobono as supporting its argument that the "other insurance" provision can be applied even when insurance policies provide coverage for different risks. However, Greenwich's initial brief correctly stated that the Riccobono court had "rejected arguments advanced by [the insurer that it had determined to be primary] that the policies were issued to different named insureds, and covered different risks." See id. Indeed, Riccobono 's holding was based on its determination that the concurrent policies covered the same parties and the same risks. See id. , ¶ 10. Therefore, the "other insurance" provisions were triggered. See id. , ¶¶ 10-12. Those are not the facts of this case. Riccobono does not support Greenwich's argument; it supports Steadfast's.
¶ 33 In its reply brief, Greenwich also cites Acuity v. Chartis Specialty Insurance Co. , 2015 WI 28, 361 Wis. 2d 396, 861 N.W.2d 533, as supportive of its argument that the "other insurance" provision can be applied even when insurance policies provide coverage for different risks. However, Acuity addressed only whether the Chartis policy covered the claims in the underlying case, not whether the Acuity policy also covered the *201 claims. See id. , ¶ 4. Both Acuity and Chartis issued liability policies to the Dorner, Inc. construction company. See id. , ¶ 2. The Acuity policy was a Comprehensive General Liability (CGL) policy. Id. The Chartis policy was a Contractors' Pollution Liability (CPL) policy. Id. Acuity defended and indemnified Dorner in four lawsuits, seeking redress for bodily injury and property damage. Id. , ¶ 3. The lawsuits arose from a natural gas-fueled explosion and fire that occurred after Dorner's employees damaged an underground natural gas pipeline during an excavation project. Id. Acuity sought recovery from Chartis, asserting that the Chartis policy provided coverage for Dorner in the lawsuits. Id.
¶ 34 Our supreme court stated that it would address the following three arguments regarding Chartis's obligations under its policy to defend and indemnify Dorner: (1) whether the escaped gas was a pollution condition, see id. , ¶ 39 ; (2) if the escaped gas was a pollution condition, whether the bodily injury and property damage were caused by the pollution condition, see id. , ¶ 40 ; and (3) whether concurrent coverage was possible under both Acuity and Chartis's policies, see id. , ¶ 41. We interpret Greenwich's appellate argument as relying on the third Acuity argument. See id. , ¶ 41. However, the Acuity facts and the court's ruling distinguish Acuity from this case.
¶ 35 First, the facts involved the same insured (Dorner) engaging in the same conduct (excavating an underground gas line) that caused the injuries. See id. , ¶¶ 2-3. Unlike Acuity , the rain event lawsuits assert separate claims against United Water and Veolia, where each operated the sewage system at different times. Additionally, the two insurers had different primary insureds, Greenwich insured United *511 Water and *202 Steadfast insured Veolia. Further, each policy named MMSD as an additional insured, but only for the conduct of United Water in the Greenwich policy and only for the conduct of Veolia in the Steadfast policy. Each policy excluded coverage for MMSD for its own conduct.
¶ 36 Acuity did not address any issues regarding "other insurance" or excess coverage and did not make any rulings about Acuity's CGL policy. See id. , ¶ 101. Rather, the court noted at the outset that "[t]he dispute in the instant case revolves around the insurance companies' different interpretations of Chartis's duties and obligation to the insured under Chartis's CPL policy." Id. , ¶ 4. The court only concluded that the claims in the underlying lawsuits were covered under the Chartis policy, see id. , ¶ 8, expressly stating:
[W]e note that our determination that Chartis's CPL policy provides coverage in the instant case does not necessarily mean concurrent coverage exists. Acuity defended and indemnified the insured, but the question of whether Acuity's CGL policy covers the insured's liability for the natural gas-fueled explosion and fire is not before us and we do not decide it.
Id. , ¶ 101. Accordingly, Acuity does not support Greenwich's argument.
¶ 37 Therefore, we reject Greenwich's arguments and conclude that the "other insurance" provisions in the policies were not triggered. See id. Both the Greenwich policy and the Steadfast policy provided primary coverage at different times for MMSD in the rain event lawsuits and both insurers had a duty to defend. For these reasons we conclude that Greenwich's policy provided primary coverage for the claims against MMSD for the earlier conduct of United Water in operating and maintaining the MMSD system, not excess coverage to that of the Steadfast policy, which provided coverage for *203 MMSD arising from Veolia's more recent conduct in operating and maintaining the MMSD system.[6]
MMSD Met its Risk Retention Amount, Making Greenwich Liable for Primary Coverage
¶ 38 Greenwich argues that pursuant to the plain language of its policy, MMSD was only entitled to coverage after MMSD satisfied the $250,000 risk retention amount. The policy provided:
c. Retention: The Retention amount stated in Item 4. of the Declarations shall be borne by the INSURED and shall not be insured.
Greenwich states that, accordingly, only reasonable defense costs incurred and paid by MMSD-and not reimbursed by Steadfast-could satisfy the risk retention amount. Greenwich goes on to argue that because Steadfast paid MMSD's reasonable *512 defense costs, there is no indication that Steadfast could show that MMSD satisfied the self-insured risk retention. Steadfast *204 does not contest Greenwich's assertion that MMSD had to satisfy the $250,000 risk retention amount. Rather, it asserts that the undisputed facts show that MMSD met that amount.
¶ 39 As Steadfast points out, in litigating MMSD's claims against Greenwich for unpaid legal fees for defense of the rain event lawsuits against it, both MMSD and Greenwich moved for summary judgment. MMSD's partial summary judgment filings include the affidavit of its counsel, Joseph T. Ganzer, proffering a June 16, 2011 letter[7] from MMSD to Greenwich regarding the risk retention issue. The letter states as follows:
The Greenwich policy requires an exhaustion of the $250,000 retention amount, per item four on the Declarations page. To date, MMSD has paid its legal counsel approximately $735,611.75 for legal fees and expenses related to the Banicki[8 ] case, and $87,991.00 for the FM Global[9 ] case. A summary is attached. Clearly, we have surpassed the retention amount and are well into the liability portion of the policy
In the affidavit, Ganzer averred that MMSD had incurred "$594,302.23 in defense costs representing the difference between the rates Steadfast applied and the amount MMSD paid to [its outside counsel]."
¶ 40 Under summary judgment standards, the affidavit and the letter met MMSD's burden of presenting *205 prima facie proof that the $250,000 risk retention amount had been satisfied. Greenwich neither responded with any evidentiary materials to refute that factual showing nor did it mention the issue in its trial court brief in opposition to the partial summary judgment motion. Additionally, in its appellate reply brief, Greenwich does not contest Steadfast's assertion that Greenwich did not challenge those facts upon summary judgment.
¶ 41 Instead, Greenwich contends that the claimed costs were not eligible to be covered in any event. It says the unpaid defense costs claimed by MMSD were not reimbursed by Steadfast because Steadfast deemed those expenses unreasonable and, therefore, not subject to coverage under Steadfast's policy.[10] It further maintains that Steadfast must show not only that the expenses were incurred and not reimbursed, but that they were subject to coverage under Greenwich's, not Steadfast's, policy. Greenwich maintains that there is no suggestion that the determination as to the reasonableness of those unreimbursed expenses would have been different under the Greenwich policy and, therefore, there has been no showing that the risk retention amount was satisfied.
¶ 42 We agree with Steadfast that the record establishes that MMSD met the *513 $250,000 risk retention amount. MMSD's June 16, 2011 letter sets forth the amounts that MMSD paid for its defense in the *206 lawsuits and states that the risk retention amount was surpassed. Further, the affidavit states that MMSD incurred defense costs of $594,302.23 for outside counsel and $313,211.00 for in-house counsel, and that Steadfast did not pay MMSD for those defense expenses. Greenwich does not cite any facts in the record that refute the facts submitted by MMSD. Greenwich had the opportunity before the trial court to introduce facts to refute the evidence noted above but did not do so. Therefore, we conclude that MMSD satisfied the $250,000 risk retention amount. As a consequence, we conclude that Greenwich's policy provided primary coverage for claims in the underlying lawsuit against the MMSD based on United Water's conduct in operating and maintaining MMSD's system.
¶ 43 In sum, because we hold that both the Greenwich and the Steadfast policy provided MMSD primary coverage, it follows that both had a duty to defend MMSD in the rain event lawsuits. Because MMSD tendered the defense of the lawsuits to Greenwich and Greenwich refused to defend MMSD, Greenwich breached its duty to defend MMSD. Therefore, MMSD was entitled to recover the defense costs, including attorney fees, from Greenwich based on Greenwich's breach of its contract with MMSD.
Steadfast's Equitable Subrogation Claim was Timely Filed
¶ 44 Greenwich characterizes Steadfast's claim as seeking contribution and argues that Steadfast's claim is barred by the one-year statute of limitations set forth in WIS. STAT. § 893.92 for contribution claims. It reasons that the rain event lawsuits arose as a result of sewage back-ups causing property damage, and the claims asserted in the underlying actions were *207 negligence-based tort claims. It then argues that, since the rain event lawsuits were tort claims, Steadfast's contribution claim is based in tort and the one-year statute of limitations applies.
¶ 45 By contrast, Steadfast argues that its claim is for subrogation, based on: (1) Greenwich's breach of its contract with MMSD to defend MMSD against the claims in the rain event lawsuits, (2) the fact that Steadfast never paid for any damages that the plaintiffs claimed in the rain event lawsuits, and (3) the fact that Steadfast made payments only for costs, fees, and other expenses in connection with MMSD's defense of the rain event lawsuits. Steadfast further argues that it never alleged that Greenwich was a tortfeasor. Rather, it alleged that Greenwich breached its duty to defend MMSD in the rain event lawsuits.
¶ 46 As will be further explained, we agree with Steadfast and conclude that the six-year statute of limitations in WIS. STAT. § 893.43 is applicable in this case. See Boldt v. State , 101 Wis. 2d 566, 578, 305 N.W.2d 133 (1981) (discussing WIS. STAT. § 893.19(3) (1977), which is now WIS. STAT. § 893.43 ). Steadfast's claim is an equitable subrogation claim, based on the allegation that Greenwich breached its duty to defend MMSD in the rain event lawsuits, not a tort claim for contribution.
¶ 47 WISCONSIN STAT. § 893.92, titled "[a]ction for contribution," states as follows:
An action for contribution based on tort , if the right of contribution does not arise out of a prior judgment allocating the comparative negligence between the parties, shall be commenced within one year after the cause of action accrues or be barred.
*208 Id. (emphasis added). The language of § 893.92 plainly states that the statute applies *514 only to an action for contribution and must be based on tort . See State ex rel. Kalal v. Circuit Court for Dane Cty. , 2004 WI 58, ¶ 45, 271 Wis. 2d 633, 681 N.W.2d 110 ("[W]e have repeatedly held that statutory interpretation 'begins with the language of the statute. If the meaning of the statute is plain, we ordinarily stop the inquiry.' ") (citation omitted). Here, Steadfast's claim is based on equitable subrogation. Steadfast alleged that Greenwich breached its duty to defend MMSD in the rain event lawsuits, resulting in Steadfast's payment of the costs for MMSD's defense in those lawsuits.
¶ 48 Greenwich cites State Farm Mutual Automobile Insurance Co. v. Schara , 56 Wis. 2d 262, 201 N.W.2d 758 (1972), and Milwaukee Mutual Insurance Co. v. Priewe , 118 Wis. 2d 318, 348 N.W.2d 585 (Ct. App. 1984), in support of its argument that the one-year statute of limitations for contribution applies. However, neither case involved a breach of a duty to defend or a breach of contract claim.
¶ 49 Schara involved an auto accident where the plaintiffs in the underlying personal injury lawsuit were passengers in a car insured by State Farm Mutual Automobile Insurance Company. Id. , 56 Wis. 2d at 263, 201 N.W.2d 758. The passengers sued State Farm's insured, and State Farm settled and paid the plaintiffs' personal injury claims. Id. State Farm then commenced an action for contribution against the driver of the other car. Id. The facts did not involve a duty to defend claim nor a breach of contract claim. See id. Schara does not support Greenwich's argument.
¶ 50 Priewe also involved an auto accident. Id. , 118 Wis. 2d at 320, 348 N.W.2d 585. In Priewe , Milwaukee Mutual *209 Insurance Company paid medical expenses for its insured's wife and, subsequently, commenced an action against the driver of the other car and his insurer to recover the amounts it paid for the medical expenses. Id. Again, there was neither a contract claim nor a claim for breach of a duty to defend. See id. at 319-23, 348 N.W.2d 585. Further, no one raised the issue whether the claim was one for contribution or subrogation. See id.
¶ 51 In its reply brief, Greenwich further argues that Wisconsin courts have not allowed insurers to subrogate in the context of a breach of duty claim, and that the proposition that they can was explicitly rejected in Riccobono , 234 Wis. 2d 374, ¶ 25, 610 N.W.2d 501. Greenwich misconstrues Riccobono . In Riccobono , this court held that "[t]he holding in Elliott v. Donahue , 169 Wis. 2d 310, 485 N.W.2d 403 (1992), does not encompass the payment of attorney fees and costs from one insurer to another, and the other theories proposed by [the excess insurer ] permitting an award of attorney fees and costs do not apply to these facts ." See Riccobono , 234 Wis. 2d 374, ¶ 2, 610 N.W.2d 501 (emphasis added).
¶ 52 Rather than rejecting the excess insurer's claim for attorney fees and costs, this court merely held that the facts of the case did not fit within the parameters of Elliott . See Riccobono , 234 Wis. 2d 374, ¶¶ 29-30, 610 N.W.2d 501. The court also recognized that, although other theories proposed by the excess insurer might permit an award of attorney fees and costs, those theories did not apply to the facts of the case. Id ., ¶¶ 29-33.
¶ 53 Addressing whether the excess insurer might be subrogated to its insured's right to attorney fees and costs, this court examined the factual differences between Elliott and Riccobono . See Riccobono , 234 Wis. 2d 374, ¶¶ 29-30, 610 N.W.2d 501. We determined that the *210 equities present in Elliott were not present in Riccobono . See *515 Riccobono , 234 Wis. 2d 374, ¶¶ 29-30, 610 N.W.2d 501. We stated, "[t]hus, the conditions under which [the excess insurer] might have been subrogated to [the insured's] right to attorney fees and costs never came into fruition." Id ., ¶ 28. Thus, Riccobono did not reject subrogation as a basis for awarding attorney fees to an insurance company; it merely held that the facts to support such a claim were not present in the case. See id.
¶ 54 Additionally, in Acuity , Acuity defended and indemnified the insured. Id. , 361 Wis. 2d 396, ¶ 13, 861 N.W.2d 533. The trial court found that Chartis breached its duties of defense and indemnification and ordered Chartis to share with Acuity the costs of defending and indemnifying the insured. Id. , ¶ 5. Although the supreme court did not identify the theory of recovery, it affirmed the trial court's order that Chartis, the insured's insurer, directly pay Acuity, also an insurer of the same insured, the costs of defense and indemnification. See id. See also Southeast Wis. Prof'l Baseball Park Dist. v. Mitsubishi Heavy Indus. Am., Inc. , 2007 WI App 185, ¶¶ 61-62, 304 Wis. 2d 637, 738 N.W.2d 87 (directing an insurer that had breached its duty to defend to pay the full costs of the defense to the insurer that had defended the insured).
¶ 55 Also, in Valley Bancorporation v. Auto Owners Insurance Co. , 212 Wis. 2d 609, 623-24, 569 N.W.2d 345 (Ct. App. 1997), this court held that, under the doctrine of equitable subrogation, Valley Bancorporation's primary insurer could recover from the excess insurer the amount it paid over its policy limit. The excess insurer, Auto Owners Insurance Company, had breached its duty to defend. See id. at 613, 569 N.W.2d 345. When Valley Bancorporation tendered defense of the action *211 to Auto Owners, the insurer responded by letter, stating that the complaint could be construed as alleging a covered claim for libel or slander and, if the court granted damages for the covered claim, there would be coverage. Id. at 614-15, 569 N.W.2d 345. The letter went on to say the allegations were not clear and, therefore, Auto Owners did not believe that the complaint stated a claim covered under the policy. Id. at 615, 569 N.W.2d 345. Auto Owners denied coverage and did not defend the claim. See id.
¶ 56 On appeal, Auto Owners argued that the trial court erred in applying the doctrine of equitable subrogation and awarding the primary insurer the amounts that it had paid over its policy limits. See id. at 613, 569 N.W.2d 345. However, we concluded that subrogation was appropriate. See id. at 613, 623-24, 569 N.W.2d 345. We explained the doctrine of equitable subrogation as follows: "[S]ubrogation may properly be applied when a person other than a mere volunteer pays a debt or demand which in equity and good conscience should be satisfied by another. The doctrine rests upon the theory of unjust enrichment ." Valley Bancorporation , 212 Wis. 2d at 623-24, 569 N.W.2d 345 (emphasis added, one set of quotation marks omitted, quoting D'Angelo v. Cornell Paperboard Products Co ., 19 Wis. 2d 390, 399-400, 120 N.W.2d 70 (1963) ). Thus, as a claim based on the theory of unjust enrichment, Steadfast's equitable subrogation claim is subject to the six-year statute of limitations set forth in WIS. STAT. § 893.43. See Boldt , 101 Wis. 2d at 578, 305 N.W.2d 133 (holding that an unjust enrichment claim being "a claim based on quasi-contract ... was subject to the six-year statute of limitations of [ WIS. STAT. § 893.43 ]").
¶ 57 Based on the foregoing, we conclude that Steadfast's claim is for equitable subrogation based on Greenwich's breach of its duty to defend MMSD against the claims in the rain event lawsuits. Therefore, *212 we conclude that WIS. STAT. § 893.43, *516 the six-year statute of limitations, applies, and Steadfast's claims in this case were timely filed.
Under the Facts, Greenwich is Equitably Responsible for All Defense Costs for the Rain Event Lawsuits Because it Breached its Duty to Defend
Greenwich is not Entitled to Allocation of Defense Costs
¶ 58 With respect to allocation of the costs of MMSD's defense, Greenwich argues that, if this court determines that Greenwich breached its duty to defend MMSD under equitable principles and the applicable law, the cost of MMSD's defense should be allocated between Steadfast, Travelers, and Greenwich.[11] Greenwich asserts that, if this court determines that Greenwich's policy is not excess to Steadfast's policy, both policies offer primary coverage, no insurer is afforded priority over the other, and each contributes pro rata toward the loss (usually based on each insurer's policy limits), citing Oelhafen , 171 Wis. 2d at 534, 492 N.W.2d 321 (which cites Schoenecker , 88 Wis. 2d at 671-73, 277 N.W.2d 782 ), and citing Acuity , 361 Wis. 2d 396, ¶ 102, 861 N.W.2d 533, for the proposition that the sharing of defense costs was the ultimate result in that case.
¶ 59 Greenwich further points out that, in responding to Travelers' summary judgment motion, Steadfast argued that, under Traveler's policy, Travelers had a duty to defend MMSD and failed to do so.
*213 Based on that, Greenwich asserts that one-third of the defense costs should be allocated among each of the three insurers-Greenwich, Travelers, and Steadfast. In the alternative, Greenwich argues that if the court applies a pro rata allocation based on policy limits, Greenwich would be responsible for 20/52 (about thirty-eight percent) of the defense costs because its policy limits represented thirty-eight percent of the total policy limits of all insurers.[12] Greenwich also addresses Burgraff v. Menard, Inc. , 2016 WI 11, ¶ 73, 367 Wis. 2d 50, 875 N.W.2d 596, and Mitsubishi , 304 Wis. 2d 637, 738 N.W.2d 87 (both cited by Steadfast), and attempts to distinguish those cases.
¶ 60 In opposition, Steadfast argues that the trial court correctly concluded that Greenwich, as a breaching insurer, was responsible for all the costs of the defense. Quoting the following statement from Newhouse , Steadfast states that MMSD is entitled to recover from Greenwich all of its damages:
Damages which naturally flow from an insurer's breach of its duty to defend include: (1) the amount of the judgment or settlement against the insured plus interest; (2) costs and attorney fees incurred by the insured in defending the suit; and (3) any additional costs that the insured can show naturally resulted from the breach.
See id. , 176 Wis. 2d at 838.[13] Steadfast asserts that there is no question that MMSD actually incurred the defense costs for the following reasons: (1) MMSD
*214 chose its own counsel; (2) counsel billed MMSD
*517 directly; (3) MMSD paid those bills; and (4) MMSD submitted bills to Steadfast for reimbursement. Therefore, all amounts that Steadfast paid to MMSD for defense costs were previously paid by MMSD. Steadfast states that Greenwich does not dispute these facts.
¶ 61 Steadfast further argues that subrogation gives it a right to recover these damages from Greenwich and quotes D'Angelo , maintaining that "[s]ubrogation is an equitable assignment under which the subrogee stands in the shoes of the original holder of the cause of action." Id. , 19 Wis. 2d at 401, 120 N.W.2d 70. Relying on Valley Bancorporation , 212 Wis. 2d at 609, 569 N.W.2d 345, and Burgraff , 367 Wis. 2d 50, ¶ 73, 875 N.W.2d 596, Steadfast asserts that "[t]here is no question that an insurer [that] does assume the defense of an action has the right to sue in subrogation an insurer [that] has breached its duty to defend."
¶ 62 We note that Greenwich cites Oelhafen , 171 Wis. 2d at 534, 492 N.W.2d 321 (citing Schoenecker , 88 Wis. 2d at 665, 277 N.W.2d 782 ), for the general proposition that two policies with primary "other insurance" provisions must share defense costs on an "equal shares" or "pro-rata " basis. However, neither Oelhafen nor Schoenecker involved an insurer that had breached its duty to defend its insured, and, therefore, they are not applicable to the facts of this case.
¶ 63 Greenwich also argues that Burgraff is distinguishable based on its assertion that Burgraff instructs that liability for all the defense costs would flow to Greenwich only if its insured-MMSD-was damaged by Greenwich's breach. Greenwich asserts that, even if it wrongfully denied coverage and refused to defend MMSD in the rain event lawsuits, MMSD
*215 suffered no damage and, therefore, there is no pre-breach position to which MMSD may be returned.
¶ 64 In effect, Greenwich asks this court to conclude that as long as an insured is provided a defense by another insurer, there is no consequence for an insurer who breaches its duty to defend that insured. Greenwich's position is problematic. First, the record shows that MMSD suffered damage. The facts are that MMSD was billed by its outside legal counsel. MMSD paid those bills and subsequently was reimbursed, in part, by Steadfast. This action included MMSD's claim for approximately $600,000 for unpaid defense costs on the grounds that Steadfast did not pay the full amount of the attorney fees and costs billed by MMSD's attorneys.
¶ 65 Further, Greenwich's position is not consistent with the Burgraff holding. After determining that Menard's self-insured retention was "other insurance," the court stated that "[w]e discuss next the nature of available damages to provide guidance to the [trial] court [on remand]." Id. , 367 Wis. 2d 50, ¶ 58, 875 N.W.2d 596. The first damage question was whether Menard could recover from Millers First the full amount of the judgment or settlement-not whether it could recover defense costs.[14] Id. , ¶ 59. After discussing Hamlin Inc. v. Hartford Accident and Indemnity Co. , 86 F.3d 93, 95 (7th Cir. 1996), which held that awarding the insured the entire jury verdict would be a windfall, the Burgraff court stated:
Likewise, it would be a windfall for Menard if Millers First were ordered to pay the entire verdict in this case.
*216 *518 Just as in Hamlin , Menard cannot demonstrate that the amount of the verdict was a result of the breach [of its duty to defend].... Thus, Menard is not entitled to damages in the amount of the jury verdict because the verdict amount does not flow naturally from the breach.
Burgraff , 367 Wis. 2d 50, ¶¶ 63-64, 875 N.W.2d 596. The Burgraff language, cited by Greenwich, addressed awarding the entire jury verdict to a breaching insurer, not the costs of defense. See id.
¶ 66 The court then addressed the issue of whether Millers First had to pay Menard the costs of defense. See id. , ¶¶ 59-69. Previously, in the decision, the court had held that Millers First had breached its duty to defend Menard. See id. , ¶ 57. As to the issue of payment of defense costs, the court held that Millers First had to pay Menard the full amount of the costs and attorney fees. Id. , ¶¶ 69, 80.
¶ 67 In its reply brief, Greenwich argues that Acuity represents binding authority for the following propositions: (1) when one insurer defends a mutual insured, and another insurer asserts a coverage position in which it denies a current duty to defend, even if the second insurer turns out to be incorrect, it has not breached any duty to the other insurer; and (2) the court should then look to the respective "other insurance" provisions in order to allocate the defense costs. See id. , 361 Wis. 2d 396, 861 N.W.2d 533.[15] It goes on to assert that there is no support for the proposition, espoused by Steadfast, "that another insurer may rely on an alleged *217 breach in order to recover all of the defense costs, effectively turning the primary insurer into excess, and vice-versa."
¶ 68 Greenwich misconstrues both Steadfast's claim for subrogation and Acuity 's holding. As noted earlier, Steadfast asserts that under the doctrine of subrogation, by paying the full costs of defending MMSD in the rain event lawsuits, it stepped into MMSD's shoes and assumed its right to recover from Greenwich the damages resulting from Greenwich's breach of its duty to defend MMSD. Steadfast is not arguing that it has an independent right as MMSD's insurer to make a claim against Greenwich. Rather, Steadfast's claim is based on the fact that Steadfast is subrogated to MMSD's claim because it paid MMSD's defense costs.
¶ 69 Furthermore, Acuity does not stand for the proposition that, even where an insurer breaches its duty to its insured, it is entitled to proration of defense costs with the insurer who properly defended the same insured. Acuity limited its claims to one-half the defense costs, and the court awarded Acuity what it requested. See id. , 361 Wis. 2d 396, ¶¶ 14, 101, 861 N.W.2d 533. No one raised or argued the issue of allocation of defense costs. See id. , ¶¶ 15-16.
¶ 70 Moreover, Acuity did not involve a breach of the duty to defend or a subrogation claim. Further, at the outset, the court noted that "[t]he dispute in the instant case revolves around the insurance companies' different interpretations of Chartis's duties and obligation to the insured under Chartis's CPL policy." Id. , ¶ 4. The court only concluded that the claims in the underlying lawsuits were covered under the Chartis policy. See id. , ¶ 94. It stated as follows:
*218 Finally, we note that our determination that Chartis's CPL policy provides coverage in the instant case does not necessarily *519 mean concurrent coverage exists. Acuity defended and indemnified the insured, but the question of whether Acuity's CGL policy covers the insured's liability for the natural gas-fueled explosion and fire is not before us and we do not decide it.
Id. , ¶ 101. Acuity does not support Greenwich's argument.
¶ 71 Greenwich also argues that Mitsubishi , 304 Wis. 2d 637, 738 N.W.2d 87, does not support Steadfast's claim. Greenwich points out that in Mitsubishi , this court rejected Travelers' claim for equitable contribution for defense costs after Travelers repeatedly refused to defend its insured and even refused to comply with court orders mandating that it defend its insured. Greenwich argues that its conduct cannot be compared to what it characterizes as Travelers' "sanctionable" [sic] conduct in Mitsubishi .
¶ 72 As Greenwich acknowledges, Mitsubishi considered the equities in the conduct of the insurers in determining whether Travelers should be responsible for the entire costs of the defense. See id. , 304 Wis. 2d 637, ¶¶ 1, 36, 738 N.W.2d 87. The Mitsubishi trial court held that as of the date that the insured filed an amended complaint, Travelers had a duty to defend at least one of the claims in the counterclaim. Id. , ¶¶ 14-16. Travelers breached its duty to defend when it failed to defend its insured. Id. , ¶¶ 20-23. The trial court then ordered Travelers to reimburse its insured as follows:
reimburse Federal for all sums it has reimbursed to or expended on behalf of the [insured], HCH and/or [Mitsubishi] for their litigation costs and attorney fees incurred in this matter since the filing of the Amended *219 Complaint on June 6, 2003, and for all sums that Federal pays for their costs and fees ... through final resolution of this action.
Id. , ¶ 22. Travelers was the breaching insurer. By contrast, Steadfast fulfilled its duty to defend MMSD.
¶ 73 Because subrogation is an equitable doctrine, we agree with Steadfast that where the equities support such a holding, a non-breaching insurer who fulfills its duty to defend and pays the cost of the defense has a right of equitable subrogation against an insurer who breaches its duty to defend the insured. See Mitsubishi , 304 Wis. 2d 637, ¶ 22, 738 N.W.2d 87.
The Equities Favor Steadfast, not Greenwich
¶ 74 Greenwich initially denied coverage on the grounds that the rain event occurred after United Water ceased operating and maintaining MMSD's system. It also raised the risk retention amount and "other insurance" issues. In response, MMSD referenced specific allegations in the complaint concerning United Water's negligent conduct. Greenwich responded that there was a potential for coverage but asserted that there was no coverage because its policy was excess because of the risk retention amount and the "other insurance" provision in the policy. Greenwich did not provide any defense and has not paid any amounts towards the defense of MMSD for the claims in the rain event lawsuits.
¶ 75 In Newhouse , our supreme court instructed as follows:
[T]he proper procedure for an insurance company to follow when coverage is disputed is to request a *220 bifurcated trial on the issues of coverage and liability and move to stay any proceedings on liability until the issue of coverage is resolved. When this procedure is followed, the insurance company runs no risk of breaching its duty to defend.
*520 Id. , 176 Wis. 2d at 836, 501 N.W.2d 1. The court further explained that
[a]n insurer does not breach its contractual duty to defend by denying coverage where the issue of coverage is fairly debatable as long as the insurer provides coverage and defense once coverage is established. However, when coverage is not determined before a liability trial, the insurer must provide a defense for its insured with regard to liability and damages.
Id. (citations and internal quotation marks omitted).
¶ 76 In this case, Greenwich made a unilateral decision that there was no coverage for MMSD or United Water for the claims in the rain event lawsuits, although it also acknowledged in two letters that there might be potential for coverage. It did not: (1) move to intervene in the rain event lawsuits; (2) seek bifurcation of the coverage issue and move to stay the liability phase of the rain event lawsuits; (3) file a separate declaratory judgment action on the coverage issue; (4) provide MMSD with a defense; or (5) obtain any judicial declaration that its unilateral coverage opinion was correct. It merely denied coverage.
¶ 77 Additionally, we note that in Burgraff , insurer Millers First argued that under the doctrine of equitable subrogation, the costs and attorney fees for the defense of the action should be prorated. Id. , 367 Wis. 2d 50, ¶ 69, 875 N.W.2d 596. The court rejected that argument, holding that a breach of a duty to defend precludes application of equitable contribution. Id. , ¶ 72. Citing *221 Mitsubishi , 304 Wis. 2d 637, ¶ 64, 738 N.W.2d 87, the court noted, "[t]he Wisconsin court of appeals previously has refused to apply equitable contribution when there has been a breach of the duty to defend." Burgraff , 367 Wis. 2d 50, ¶ 72, 875 N.W.2d 596. The court stated, "[a]lthough the dispute in Mitsubishi involved a primary and excess carrier, the policy that a primary insurer should not be rewarded for a refusal to honor its duty to defend applies here as well." Burgraff , 367 Wis. 2d 50, ¶ 72, 875 N.W.2d 596. It went on to quote Mitsubishi as follows:
We perceive no good policy reason to reward Travelers ... for its repeated refusal to defend-even after being repeatedly told it had a contractual duty to do so-by reducing the amount the trial court has determined it owed. Such a reduction would reward a primary carrier for a wrongful refusal to defend and create something akin to a litigation expense game of "chicken"-with offsets going to the obligated primary insurer who breached its duty.
Burgraff , 367 Wis. 2d 50, ¶ 72, 875 N.W.2d 596 (citation omitted; ellipses in Burgraff ). Thus, Burgraff affirmed the reasoning of Mitsubishi under facts similar to those of this case.
¶ 78 We conclude that under the doctrine of equitable subrogation, upon payment to MMSD of defense costs in the rain event lawsuits, Steadfast stepped into MMSD's shoes and was entitled to recover from Greenwich the same damages that MMSD would have been entitled to recover from Greenwich, based on Greenwich's breach of its duty to defend MMSD in the rain event lawsuits. Under the equities of this case, the trial court appropriately determined that Greenwich *222 was obligated to pay Steadfast the defense costs for the rain event lawsuits.
Steadfast is Equitably Entitled to Recover Attorney Fees
¶ 79 Greenwich argues that Wisconsin law simply does not provide for the recovery of attorney fees in this type of case. It attempts to distinguish Elliott , (cited by Steadfast), stating that Elliott involved a lawsuit by the insured against *521 his insurer, Heritage Mutual Insurance Company, over coverage.
¶ 80 In Elliott , the plaintiff was involved in an auto accident with Donahue. Id. , 169 Wis. 2d at 314, 485 N.W.2d 403. Donahue's stepmother had an insurance policy with Heritage that covered Donahue, while operating another's car with the reasonable belief of having permission to do so. Id. Elliott sued Donahue and Heritage, among others. Id. Heritage denied coverage, based on the fact that Donahue did not have the permission of the car's owner to drive it. Id. at 315, 485 N.W.2d 403. Heritage also moved the court for a bifurcated trial because of the coverage issue. Id. The court granted the bifurcated trial, but did not stay the proceedings with respect to the damage claim. Id. Heritage did not provide counsel for Donahue until the coverage issue was resolved. Id. The jury found coverage and Heritage then provided Donahue a defense. Id.
¶ 81 In a post-verdict motion, Donahue sought to recover his actual attorney fees and costs for the litigation. Id. The trial court denied the motion and Donahue appealed. Id. This court held that Donahue was entitled to recover costs and reasonable attorney fees incurred in defending himself, but not attorney fees with respect to the coverage issue. See id.
*223 ¶ 82 Our supreme court held that the principles of equity call for the insurer to be liable to the insured for expenses, including coverage, incurred while successfully establishing coverage. Id. at 322, 485 N.W.2d 403. The court held that
[t]he insurer that denies coverage and forces the insured to retain counsel and expend additional money to establish coverage for a claim that falls within the ambit of the insurance policy deprives the insured the benefit that was bargained for and paid for with the periodic premium payments. Therefore, the principles of equity call for the insurer to be liable to the insured for expenses, including reasonable attorney fees, incurred by the insured in successfully establishing coverage.
Id.
¶ 83 Citing several cases limiting the Elliott holding to its unique and particular facts, Greenwich argues that Elliott 's holding is limited to a lawsuit between the insured and the insurer, not another insurer of the insured. Although the cases cited by Greenwich state that Elliott should be limited to the facts of that case, none of those cases involved a breach of the duty to defend. For example, in Ledman v. State Farm Mutual Automobile Insurance Co. , the court stated: "[i]n Elliott , the court determined that the insured was entitled to an award of attorney's fees incurred because the insurer breached its duty to defend.... [T]hat is not the case here. There was no breach of a duty to defend." Ledman , 230 Wis. 2d 56, 70, 601 N.W.2d 312 (Ct. App. 1999) (internal citation omitted). Ledman supports Steadfast's argument that attorney fees may be recovered in a lawsuit to establish coverage where the insurer has breached its duty to defend. See id.
*224 ¶ 84 Greenwich also argues that numerous Wisconsin courts have rejected the notion that an insurer can recover its attorney fees from another insurer. It cites Riccobono , 234 Wis. 2d 374, ¶ 32, 610 N.W.2d 501, which states that "[t]he payment of attorney fees and costs in a coverage dispute ... has never been awarded in Wisconsin on the basis of the doctrine of equitable indemnification and we decline to do so here." Id. (emphasis added). What Greenwich does not point out is that this quotation pertained to the excess insurer's independent claim that it was entitled to recover the attorney fees under the doctrine *522 of equitable indemnification; it was not a subrogation claim.
¶ 85 Here, Steadfast is arguing that it is entitled to recover the attorney's fees under the doctrine of equitable subrogation. In Riccobono , the excess insurer also argued that it was entitled to recover attorney fees under the doctrine of subrogation. Id. , ¶ 25. The excess insurer argued that because Capitol, another insurer, breached its duty to defend the insured, the excess insurer stepped into the shoes of its insured and was entitled to its attorney fees and costs. Id. , ¶ 27. This court did not simply reject the subrogation claim outright. Rather we held that the equities did not favor the excess insurer under the facts of the case. See id. , ¶ 29. The court first noted that Capitol never refused to defend the insured because the insured never tendered the defense to Capitol. Id. , ¶ 28. Rather, it was the excess insurer who notified Capitol that the excess insurer wanted Capitol to defend the insured. Id. The court stated that the insured "had no right to receive reimbursement from Capitol for its failure to defend because [the insured] never asked Capitol to defend it." Id. In other words, the excess insurer could not assert a claim for subrogation for a right its insured never possessed. See id.
*225 ¶ 86 By contrast here, MMSD tendered the defense of the rain event lawsuits to Greenwich and Greenwich breached its duty to defend MMSD. Therefore, MMSD had a right to receive reimbursement from Greenwich for the costs of defense, including attorney fees.
¶ 87 Because subrogation is based on equitable principles, the court in Riccobono went on to examine the equities under the facts of the case. The court stated:
The equities also do not favor [the excess insurer]. The trial court ruled that Capitol had not received notice which would trigger its obligations under the policy until the tender of defense by [the excess insurer]. When Capitol did receive notification of the possibility of coverage under the Riccobono policy, it immediately sought and received a stay of the litigation and promptly sought a trial on the coverage dispute.... In Elliot , Heritage refused to accept the defense of Donahue and failed to obtain a stay of the proceedings.... Here Capitol obtained a stay of the underlying suit. Further, after the trial court's determination, Capitol immediately assumed the duty to defend.
Riccobono , 234 Wis. 2d 374, ¶¶ 29-30, 610 N.W.2d 501 (some formatting altered; internal citations omitted).
¶ 88 We conclude that Greenwich breached its duty to defend MMSD in the rain event lawsuits. Therefore, MMSD was entitled to recover the attorney fees in proving covering coverage existed under the Greenwich policy. Further, under the doctrine of equitable subrogation, Steadfast stepped into MMSD's shoes and under the facts of this case, Steadfast is equitably entitled to recover those attorney fees in defending coverage.
*226 CONCLUSION
¶ 89 For the reasons stated above we conclude that (1) Greenwich's policy provided primary, not excess coverage for claims against MMSD; (2) the record shows that MMSD met its risk retention amount; (3) the six-year statute of limitations under WIS. STAT. § 893.43 applies because Steadfast's breach of duty to defend claim is based on the doctrine of equitable subrogation and is, therefore, a contract claim; (4) under the facts of this case due to Greenwich's breach of its duty to defend *523 MMSD, Greenwich is not equitably entitled to an allocation of the costs of MMSD's defense; and (5) under the facts of this case, Steadfast is equitably entitled to recover attorney fees in this lawsuit against Greenwich in defending coverage. Based on the foregoing, we affirm the order of the trial court.
By the Court. -Order affirmed.

Initially, the Honorable Mary M. Kuhnmuench presided over this action. Later, the Honorable Glenn H. Yamahiro presided over the action. In May 2015, Judge Kuhnmuench denied Greenwich's summary judgment motion, and, in June 2016, Judge Yamahiro granted Steadfast's summary judgment motion. We refer to these judges collectively as the trial court unless otherwise specified.

Another MMSD insurer, Travelers Property Casualty Company of America, was named too; it later settled with all the parties and is not a party to this appeal.

All references to the Wisconsin Statutes are to the 2015-16 version unless otherwise noted.

Marks v. Houston Casualty Company held that insurance exclusions may be considered in the analysis of whether an insurer has breached its duty to defend its insured, even when the insurer has declined to defend its insured, and in so holding overruled several prior decisions, including Radke v. Fireman's Fund Insurance Co. , 217 Wis. 2d 39, 44, 577 N.W.2d 366 (1998), "insofar as they suggest that exclusions may not be considered in an analysis of whether an insurer has breached its duty to defend its insured simply because the insurer declined to defend its insured. See Marks , 2016 WI 53, ¶¶ 69, 75, 369 Wis. 2d 547, 881 N.W.2d 309. The trial court's May 2015 summary judgment decision relied upon Radke , 217 Wis. 2d at 45-46, 577 N.W.2d 366.

Because Steadfast has conceded that, under Wisconsin law, Greenwich did not waive its right to litigate coverage, we need not address Greenwich's argument that the trial court should have applied New York law, which has not adopted waiver or estoppel in the context of a breach of a duty to defend claim.

Steadfast notes that Greenwich's initial appellate brief omitted its trial court argument that the Greenwich policy was excess to the Steadfast policy because under case law, Steadfast was obligated to defend MMSD against all claims raised in the underlying lawsuit, including the claims against United Water. Citing A.O. Smith Corp. v. Allstate Insurance Cos. , 222 Wis. 2d 475, 492, 588 N.W.2d 285 (Ct. App. 1998), Steadfast argues that because Greenwich omitted the argument from its initial appellate brief, Greenwich has abandoned the argument on appeal.
We agree. It would be inherently unfair if we allow Greenwich to omit an argument from its initial appellate brief and allow Greenwich to raise it for the first time on appeal in its reply brief. See id. In addition, we observe that Greenwich neither developed nor cited any authority in support of such argument. This court will not consider arguments that are "unsupported by references to legal authority" or "inadequately briefed." See State v. Pettit , 171 Wis. 2d 627, 646, 492 N.W.2d 633 (Ct. App. 1992).

In its appellate response brief, Steadfast mistakenly refers to the letter as being a "July 16, 2011, letter." However, the letter is dated June 16, 2011.

See Banicki v. Veolia Water North America-Central, LLC , No. 09CV001860 (Milwaukee Cty. Cir. Ct.).

See FM Global v. Veolia Water North America-Central, LLC , No. 09CV007594 (Milwaukee Cty. Cir. Ct.).

Although Greenwich asserts that Steadfast deemed the unreimbursed defense costs unreasonable, no evidence in the record refutes the affidavit wherein Ganzer averred that MMSD had incurred "$594,302.23 in defense costs representing the difference between the rates Steadfast applied and the amount MMSD paid to [its outside counsel]."

As previously stated, the parties stipulated that Steadfast paid $1.55 million in costs, fees, and other expenses in defending MMSD in the rain event lawsuits and that, for purposes of Steadfast's claims against Greenwich, such total is reasonable.

Steadfast's policy limits were $30 million, Greenwich's policy limits were $20 million, and Travelers' policy limits were $2 million.

Steadfast only seeks the recovery of defense costs in the stipulated amount because its settlement with the rain event lawsuit plaintiffs did not include any indemnity payments.

The Burgraff jury ultimately awarded damages of $345,396.07 to Menard-that amount was reduced due to the jury's finding of contributory negligence. Burgraff v. Menard, Inc. , 2016 WI 11, ¶ 15 n.2, 367 Wis. 2d 50, 875 N.W.2d 596.

In making this argument in its reply brief, Greenwich cites Acuity v. Chartis Specialty Insurance Co. , 2015 WI 28, 361 Wis. 2d 396, 861 N.W.2d 533, generally. It provides no pincite to support the propositions it asserts.